May it please the court, my name is Andrew Bowman and I represent John Milne. The District Court committed procedural plain error and abused its discretion when it sentenced John Milne to the maximum possible punishment of two years imprisonment and imposed the sentence utilizing a forbidden statutory provision that is punishment, which is applicable only to the original offense sentencing, to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense. There's no need to protect the public from John Milne. First, it's been 15 years since he committed an offense and the court found that he never committed a fraud on the court when he represented that he would make payment but couldn't and didn't. He paid a total of $1,559,000 during the course of his supervisory lease and after sentencing. Well, I'm not sure the court found that he was able to pay the whole $6,000,000 but certainly the court found that he found money for sybaritic luxuries when he owed this money and chose not to pay it. Well, he did do that, Your Honor, as I think Your Honor heard the original motion here, but the problem was that he never fraudulently made representations. He never told the court that he would be able to pay with an intent to deceive the court. Yes, there was excessive spending, but that alone should not provide the court with a basis to impose the maximum possible punishment of two years here. Why doesn't that go to the nature and circumstances of the offense and the history and characteristics of the defendant? You say it was in the just punishment part of 3553A, but all of that is relevant to nature and circumstances of the offense and his history and characteristics, isn't it? Punishment is a forbidden factor. I know, but she never mentioned punishment, but she can go into the history of the case and the history of him when she sentences him for a supervisory lease violation. But there was no basis for specific deterrent sentencing and there was really no basis for general Why not specific deterrence? He was clearly, as Judge Jacobs points out, he clearly had more funds than he could have used for restitution. That's specific deterrence. Don't do this again and let's send a message to other people too that you can't do that. By locking him up, Your Honor, he would never be able to make any more payment. He had offered the court $1,250,000 and the court rejected it out of hand knowing that he would never be given that if he went to jail for two years. I mean, he was punished. He got a 27-month sentence originally. Well, what about the general deterrence? Even if that argument is correct with respect to specific deterrence, that putting him in jail makes it more difficult rather than easier, nonetheless, the court had gone along with this for a long time and now he relies more on general deterrence. If you cannot justify a sentence on the basis of specific deterrence and you are imposing a sentence out of frustration with this particular defendant, then general deterrence cannot have the kind of meaning that one would want because otherwise it just becomes arbitrary and severe. Look, courts can impose maximum sentences to send messages to the community, but without a rational basis for it, then general deterrence sentencing diminishes in terms of its value. Why do you say there's no rational basis? Because this man had paid a half a million dollars during supervised release, offered another $1,250,000 within 30 days, and the court rejected it out of promises like that. The original plea agreement said he was going to pay this within three years of the judgment. It's eight years later, right? He did. He did, but the court found that it was not an intentional deception that he was promulgating on the court. The court found that he never committed a fraud on the court. The court found that he had not committed any additional crimes. There was really just no basis for imposing a two-year maximum. On the other hand, there were innumerable instances when he preferred to spend very large amounts of money on luxuries for himself rather than making the payments. He did, Your Honor, and for that he admitted his violation, and he should have been sentenced within the three- to nine-month policy statement, but she chose instead to give him two years, the outside, the three- to nine-month period. As a matter of fact, it is now ten and a half months as we stand here since he started serving his sentence, and I don't believe that the judge articulated why a maximum sentence in this case was the answer for a fair disposition to this supervisory release violation. I'm not saying there wasn't a violation. What I'm saying is that the extent of the punishment leaves us with the conclusion that what the judge was sentencing him for was for the forbidden factor of punishment itself. With respect to the Lewis case, which was decided in 2005, it's at page 28 of our brief, this court, vacated a sentence where the district judge imposed a two-year maximum sentence for supervised release violation where there was a three- to nine-month guideline or policy statement because of the inadequacy of the district judge's explanation under 3553C, and we would respectfully submit that that is exactly what happened in this case. Of course, Lewis, which was decided in 2005, was reiterated in Rosallo-Morales, the most recent Supreme Court decision in 2018 with respect to plain error, which we submit there is. I note my time is up. You've observed rebuttal, so we'll hear you then. Good morning, Your Honors. May it please the Court, Assistant U.S. Attorney Elena Coronado for the government. The district court sentence of John Milne for violation of supervised release was fully explained on the record, fully grounded in the facts and the history of this case, and fully compliant with the applicable law and the applicable sentencing factors. It was procedurally and substantively reasonable, and it should be affirmed. This is a case in which the defendant, John Milne, had a legal obligation as a condition of his supervised release to pay an outstanding $5.25 million to the SEC as disgorgement in lieu of restitution, and then that would be rerouted to the victim's fund. He had, as the record makes very plain, the ability to pay it, but he chose not to pay it. Instead, he's— Had the ability to pay the full amount? The district court found that, well, certainly at the beginning, he had, and the record shows that he had received $12.1 million in ill-gotten gains as a result of his fraud. And, of course, disgorgement is an equitable remedy that is meant to reach those ill-gotten gains. Not everybody who has ill-gotten gains is thrifty, and they may not have the money yet. True. And this case certainly shows a long history of the defendant placing, either frittering away that money, spending it on himself and his wife, or placing the money beyond the reach of the SEC. However, in this case, the district court didn't, and made very clear in the sentencing transcript, didn't find that the violation had occurred, or that the full, outstanding $5.25 million hadn't been paid. What the district court said was, I want to see substantial payments. That's what the defendant had repeatedly promised, and certainly his history of lavish personal expenditures demonstrates that he had the ability to make substantial payments. Instead, over the course of five years, between his initial admission of the violation of supervised release and the sentencing on that admission, he spent enormous sums of money. You've seen in the record, in 2013, when he first admitted the violations, he was spending over $99,000 per month on luxury expenditures, thousands per month on home care, thousands per month on dog walking and pet care, thousands per month on personal care, entertainment. Then in 2015 to 2017, he was continuing to spend enormous sums of money on himself and his wife. He spent $52,000 on a virtual closet service during those years, $17,000 at Hermes, $20,000 at Fendi, $25,000 at Chanel, the list goes on. This was a situation where the defendant had the absolute ability to make substantial payments as required, as a condition of his supervised release. He just chose not to. That certainly does support the violation, and as your adversary points out, certainly supports a consequence in imprisonment. The question is, is spending $3,000 a month on your dog something that justifies 24 months in prison? I think it was a combination of these expenditures and the lengthy history of delays and broken promises that the court at this point had deep familiarity with. She gave the defendant . . . Did she inherit the case from a judge who died? She did. That's right, from Judge Burns upon Judge Burns' retirement in 2015. However, the sentencing ultimately occurred in April of 2018. Between 2015 and 2018, Judge Hall had over two years, almost three years of history with this case. Where do we find in her sentencing transcript, though, that she said the guideline range of three to nine months is insufficient under 3553A? Although she didn't speak those words, she extensively discussed the rationale for the 24-month sentence that she imposed. She recited the history of the case thoroughly, really throughout the sentencing proceeding, but starting in particular at page 77 of the defendant's record. Just before she imposed the specific sentence, she talked about how the two primary factors here were deterrence, which she speaks about in particular at A96 and several pages thereafter, and then the nature and circumstances of the offense, and that's at A98 and A99. Here, she talked about both specific and general deterrence. She talked about the nature and circumstances of the offense, and she had a lengthy history with this particular defendant, which she also discussed on the record. At no time did the judge suggest, as the appellant argues, that punishment was in any way a motivating factor behind this sentence. I also would just note, as the Court is well aware, that here the standard of review is highly deferential. Because these objections were not raised below, the defendant has the right to remain silent. Unless the Court has any further questions, the government asks that the judgment be affirmed, and we'll rest on our brief. I know from the clear wording of Section 3553C, which says that a court at the time of sentencing shall state in open court the reasons for its imposition of the particular sentence, and if the sentence is not of the kind or is outside the range described for the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity. I know, Your Honor, you're familiar with the rule. That's what we're talking about here. The record does show a rather extensive review of the facts and consideration of the 3553 factors. I don't know . . . But there is no articulation by the judge of why a sentence in excess of nine months was necessary or even the maximum. That's the claim here. The claim is she imposed the maximum sentence here. Now, she did it when she said no new crimes in 15 years. This is a plain error, so it means that if you wanted to hear that, you could have asked for it, and no doubt you would have heard it. I was not a trial counsel, but that's . . . It's true generically, sir. I understand. I understand. But what Rosales-Morales says is that there's . . . and Lewis, there's a relaxed standard for plain error in sentencing cases. The worst that happens in terms of judicial economy is that there's another hearing, although what we would ask the court to do is that if the court felt that the sentence should be vacated, I would ask the court to remand the case and have . . . and with an order that Mr. Milne be released. He's already served ten and a half months, where the guideline range was three to nine months, and there was no articulation of why it was necessary to impose the maximum sentence in this case. We're not talking about new crimes. We're not talking about fraud. We're talking about a failure and coupled with excessive spending. We don't dispute that. We don't dispute that there was a violation, but under these circumstances, we respectfully submit that the court violated 3553C and that essentially the court imposed the sentence based on punishment. Thank you. Thank you, Your Honor. We will reserve decision. The case of United States v. Coupa is taken on submission. That's the last case on calendar. Please adjourn the court.